**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION**

| | | |
|---|---|---|
| JOSE DANIEL SCOBELL BENCOMO,<br><br>    Plaintiff,<br><br>vs.<br><br>IN-4LIFE FARMS, LLC;<br>OUTLIER DAIRY, LLC;<br>INTEGRATED AGRIBUSINESS<br>SOLUTIONS, LLC; and<br>CROSS INTEGRATED TRANSPORT,<br>LLC;<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civ. No. 6:25-cv-00076<br><br><br>JURY TRIAL DEMANDED |

**<u>PLAINTIFF'S COMPLAINT</u>**

1.      Plaintiff is a migrant worker who was employed to drive heavy trucks for Defendants' West Texas motor carrier operations from the late summer of 2023 into the spring of 2024. Defendants obtained H-2A visas for Plaintiff and 79 other workers by falsely representing that the workers would be engaged as agricultural equipment operators in custom combine harvesting. They were not. Instead, for approximately two months, Defendants employed Plaintiff and others as heavy tractor-trailer truck drivers hauling silage from farms in West Texas to various dairies and feedlots. Thereafter, Defendants obtained a visa extension for Plaintiff so that he could transport loads in their interstate trucking operations, which he did until May 2024. Plaintiff brings this action to secure and vindicate rights afforded him by the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA") and his employment contract, and for quantum meruit.

2.      Defendants procured these visas to pay workers at the lowest wage rate possible. Under the H-2A program, a heavy truck driver such as Plaintiff in 2023 was normally required to be paid the legally required rate of $23.15 per hour, a wage rate well above the H-2A program's "adverse effect wage rate" (AEWR) of $14.87 per hour for agricultural equipment operators in Texas, which is the wage that the overwhelming majority of H-2A workers must be paid. Despite Plaintiff working as a heavy truck driver, Defendants misclassified him and his co-workers as agricultural equipment operators in an attempt to secure multiple legal advantages that apply only to lower-paid H-2A field workers, including paying much lower wages. Defendants' actions not only violated U.S. law and Plaintiff's rights but also gave Defendants an unfair advantage over their U.S. business competitors who obeyed the law and paid lawful wages.

3.      In addition, from approximately late summer 2023 to early November 2023, Plaintiff and other similarly situated workers were regularly employed more than 40 hours during each workweek as intrastate heavy truck drivers, but Defendants never paid them overtime wages.

4.      Furthermore, throughout Plaintiff's employment, Defendants breached the terms of the employment contract with him by, among other violations, failing to pay him the proper hourly wage rate for the work he performed as a heavy truck driver and by not paying overtime.

5.      Plaintiff seeks an award of money damages, declaratory relief, and attorney's fees to make him whole for damages he suffered due to Defendants' violations of the law. Because Defendants continue to use the H-2A program to employ workers as truck drivers, Plaintiff seeks declaratory relief to ensure that he and other employees of

In-4Life Farms, LLC, Outlier Dairy, LLC, Integrated Agribusiness, LLC, and Cross Integrated Transport, LLC are not subjected to similar practices in the future.

## JURISDICTION

6. This Court has personal jurisdiction over Defendants because they all operate and maintain their principal business locations in Texas.

7. This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. §§ 1331 and 1337.

8. This Court also has subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the state claims are so related to the federal claims that they form part of the same case or controversy.

9. This Court has the power to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant In-4Life Farms, LLC resides in this district, and all Defendants are residents of Texas.

11. Additionally, venue is proper in this district pursuant to 28 U.S.C. § 1391(d) because Defendants all operate and maintain their business within this District, out of which this suit arises, and are therefore subject to the Court's personal jurisdiction.

## PARTIES

12. Plaintiff Jose Daniel Scobell Bencomo was employed by Defendants as a heavy truck driver from late summer 2023 to May 2024.

13.    At all times relevant to this action, Plaintiff was admitted to the United States under the H-2A temporary foreign worker visa program, 8 U.S.C. § 1101(a)(15)(H)(ii)(a), and possessed an H-2A visa.

14.    In addition to seeking individual relief for himself, Plaintiff brings his FLSA claim as a collective action on behalf of a group of similarly situated workers, namely, all workers employed by one or more Defendants and admitted into the United States pursuant to H-2A visas to perform primarily intrastate heavy truck driving work in Texas in 2023. Such workers may become parties to the lawsuit by filing a Notice of Consent to Participate, pursuant to 29 U.S.C. § 216(b). Plaintiff's Notice of Consent to Participate is attached hereto as Exhibit A.

15.    Defendant In-4Life Farms, LLC (also spelled variously In4Life and In 4 Life Farms; hereinafter "In4Life") is a Texas Limited Liability Company that maintains its principal place of business in Miles, Tom Green County, Texas. At all times relevant to this action, In4Life Farms was an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A), in that it transported silage to various dairies that sold their products to businesses in various states outside of Texas and, upon information and belief, it had an annual gross volume of sales made or business done of at least $500,000, exclusive of excise taxes at the retail level that are separately stated. Plaintiff and the other employees of Defendant In4Life regularly and recurrently handled goods and materials produced for interstate commerce, including sorghum and alfalfa hay.

16.    Defendant Outlier Dairy, LLC (hereinafter "Outlier Dairy") is a Texas Limited Liability Company that maintains its principal place of business in Dimmitt, Castro County, Texas. At all times relevant to this action, Outlier Dairy was an enterprise

engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A), in that

it transported silage to various dairies that sold their products to businesses and

consumers in various states outside of Texas and, upon information and belief, it had an

annual gross volume of sales made or business done of at least $500,000, exclusive of

excise taxes at the retail level that are separately stated. Plaintiff and the other employees

of Defendant Outlier Dairy regularly and recurrently handled goods and materials

produced for interstate commerce, including sorghum and alfalfa hay.

17.     Defendant Integrated Agribusiness Solutions, LLC (hereinafter

"Integrated Agribusiness") is a Texas Limited Liability Company that maintains its

principal place of business in Dimmitt, Castro County, Texas, at the same location as

Outlier Dairy. At all times relevant to this action, Integrated Agribusiness was an

enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C.

§ 203(s)(1)(A), in that it regularly and recurrently transported products across state lines,

and, on information and belief, had an annual gross volume of sales made or business

done of at least $500,000, exclusive of excise taxes at the retail level that are separately

stated. Plaintiff and the other employees of Integrated Agribusiness regularly and

recurrently handled goods and materials produced for interstate commerce, including

food products such as beer, cheese, and sausage.

18.     Defendant Cross Integrated Transport, LLC (hereinafter "Cross

Transport") is a Texas Limited Liability Company that maintains its principal place of

business in Dimmitt, Castro County, Texas, at the same location as Integrated

Agribusiness and Outlier Dairy. At all times relevant to this action, Cross Transport was

engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A), in that

it, upon information and belief, had an annual gross volume of sales made or business done of at least $500,000, exclusive of excise taxes at the retail level that are separately stated, and it regularly and recurrently engaged in:

    a.   Handling or otherwise working on silage crops by transporting them to various dairies that in turn sold their products to businesses and consumers in various states outside of Texas; and

    b.   Handling or otherwise working on other goods in the stream of commerce, such as beer, cheese, sausage, and building materials, by transporting them across state lines for use or sale.

19.    Plaintiff and the other employees of Cross Transport regularly and recurrently handled goods and materials produced for interstate commerce, including the trucks themselves.

20.    At all relevant times, all of the above-named Defendants' trucking operations were a single enterprise for purposes of the FLSA performing related activities as a unified operation under common control for a common business purpose. Facts showing that Defendants' business was so operated include, though are not limited to:

    a.   Outlier Dairy, Integrated Agribusiness, and Cross Transport are managed by Emilio Chavez Jr. and Emilio Chavez Sr.

    b.   In4Life Farms is managed by Outlier Dairy.

    c.   Emilio Chavez Jr. is the sole member (owner) of Integrated Agribusiness.

    d.   On information and belief, Emilio Chavez Jr. is the sole member (owner) of In4Life, Outlier Dairy, and Cross Transport.

e. As set forth in further detail below, In4Life, Integrated Agribusiness, and Cross Transport use a common office in Dalhart, Texas.

f. As set forth in further detail below, In4Life and Integrated Agribusiness use a common housing complex and yard, on a property owned by Outlier Dairy located outside Dalhart on FM 281, to house workers and trucks.

g. As set forth in further detail below, In4Life, Integrated Agribusiness, and Cross Transport shared personnel who performed functions such as payroll and other administrative and accounting functions interchangeably for In4Life, Integrated Agribusiness, and Cross Transport.

h. On information and belief, Cross Transport authorized Outlier Dairy and In4Life to recruit workers to fulfill its business needs through the H-2A program.

i. On information and belief, Outlier Dairy authorized In4Life to recruit workers to fulfill its business needs through the H-2A program.

j. On information and belief, Cross Transport authorized Integrated Agribusiness to recruit workers to fulfill its business needs through the H-2A program.

k. For 2024, Integrated Agribusiness was certified by the U.S. Department of Labor (USDOL) to hire over 400 workers through the H-2A program.

l. According to its motor carrier registration information filed with the U.S. Department of Transportation (USDOT), however, Integrated Agribusiness is an intrastate motor carrier hauling hay and silage with 13 drivers who covered just 2,985 miles in 2024.

m. According to its motor carrier registration information filed with USDOT, Cross Transport is an interstate motor carrier with 400 drivers who, in 2024, covered over 40 million miles.

n. While working on a visa procured in the name of In4Life, which is not a motor carrier registered with USDOT, Plaintiff in fact worked as a heavy tractor-trailer operator hauling hay and silage, primarily within the state of Texas, as described in Integrated Agribusiness's registration with USDOT.

o. While working on a visa procured in the name of Integrated Agribusiness, Plaintiff in fact worked as a heavy tractor-trailer operator hauling various commodities on long interstate hauls, as described in Cross Transport's registration with USDOT.

p. As set forth in further detail below, Plaintiff was seamlessly transitioned in November 2023 from silage hauling work (nominally on behalf of In4Life) to long-haul trucking work (nominally on behalf of Integrated Agribusiness) after receiving this offer of continued work through his silage hauling dispatcher.

q.  Each truck Plaintiff was assigned to drive bore a Cross Transport logo and, on information and belief, was owned or leased by Cross Transport and registered to Cross Transport.

r.  When Plaintiff was transitioned to long-haul trucking work in November 2023, he was given a purchase card for fuel purchases, issued in the name of Cross Transport.

s.  The bills of lading, shipping invoices, and similar documents that Plaintiff received while nominally working for Integrated Agribusiness indicated that he was transporting these loads on behalf of Cross Transport.

t.  Between November 2023 and January 2024, Plaintiff performed long-haul trucking work at the direction of a dispatcher whom he understood to be directing him on behalf of Integrated Agribusiness and Cross Transport, but he continued to receive his paychecks from In4Life's bank account.

u.  In January 2024, Plaintiff received an H-2A visa to work for Integrated Agribusiness. He continued to work as a long-haul heavy truck driver. He received his first paycheck from Integrated Agribusiness, dated January 22, 2024, and thereafter was paid by direct deposit, which appeared on his bank statements as "INTEGRATED AGRIB/QUICKBOOKS."

v.  While Plaintiff worked hauling silage, nominally for In4Life, he filled his assigned truck with fuel at a pump located at the Dalhart

yard on FM 281, which is owned by Outlier Dairy. After Plaintiff had transitioned to long-haul work, nominally for Integrated Agribusiness, when he passed through Dalhart, he was allowed to use the same pump to fill his assigned truck.

## STATEMENT OF FACTS

### I.      The Federal H-2A Visa Program

21.    The federal agricultural "guestworker" program, currently known as the H-2A program, was created by the Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq.*, and is implemented through regulations set out at 20 C.F.R. §§ 655.100 to 655.304 and 29 C.F.R. §§ 501.0 to 501.47.[1] The H-2A program authorizes the admission of foreign workers to perform agricultural labor or services of a seasonal or temporary nature.

22.    An employer in the United States may import foreign workers to perform agricultural labor or services of a temporary nature if USDOL certifies that (1) there are insufficient available workers within the United States to perform the job, and (2) the employment of foreign workers will not adversely affect the wages and working conditions of similarly situated U.S. workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1), and 20 C.F.R. § 655.100. Foreign workers admitted in this fashion are commonly referred to as "H-2A workers."

23.    There is no "cap" or limit to the number of H-2A agricultural visas the U.S. government may certify and issue each year.

---

[1] All citations to regulations governing the H-2A program are to the regulations as they existed prior to June 28, 2024.

24.     Employers seeking the admission of H-2A workers must file an Application for Temporary Employment Certification with USDOL. 20 C.F.R. § 655.130. This application must include a job offer, commonly referred to as a "clearance order" or "job order," complying with applicable regulations. 20 C.F.R. § 655.121(a)(1). Employers must certify that the job offer describes the actual terms and conditions of the employment being offered and that it contains all material terms of the job. 20 C.F.R. § 653.501(c)(3)(viii).

25.     The Application for Temporary Employment Certification requires an employer to state the job title based on the job duties that will be performed by the prospective H-2A workers.

26.     H-2A employers must provide each worker with housing that meets the applicable health and safety standards, at no cost to the worker. 20 C.F.R. § 655.122(d).

27.     Federal regulations establish the minimum benefits, wages, and working conditions that must be offered to H-2A workers by the petitioning employer to avoid adversely affecting similarly situated U.S. workers. 20 C.F.R. §§ 655.120, -.122, -.135. Among these terms is a requirement that, for every hour or portion thereof worked during a pay period, the employer will pay the workers the highest of the AEWR, the applicable prevailing wage for the occupation in the geographic area where the work is to be performed, an agreed-upon collective bargaining wage, the federal minimum wage, or the state minimum wage. 20 C.F.R. § 655.120.

28.     The AEWR for the "vast majority" of agricultural workers is based on the average hourly wage rate for "field and livestock worker[s]" for a state or region as reported by the Farm Labor Survey conducted by the U.S. Department of Agriculture.

*See* Final Rule, *Adverse Effect Wage Rate Methodology for the Temporary Employment of H-2A Nonimmigrants in Non-Range Occupations in the United States*, 88 Fed. Reg. 12,760, 12,760, 12,766–70 (Feb. 28, 2023); *accord* 20 C.F.R. § 655.120(b)(1)(i)(A) (codifying this principle) (vacated Aug. 25, 2025).

29.     For 2023, the AEWR for H-2A workers employed in Texas for field and livestock workers, including most harvesters and agricultural equipment operators, was $14.87 per hour.

30.     For 2024, the AEWR for H-2A workers employed in Texas for field and livestock workers, including most harvesters and agricultural equipment operators, was $15.55 per hour.

31.     In February 2023, USDOL published a final rule revising the methodology for determining AEWRs. 20 C.F.R. § 655.120(b)(l).[2] Under this rule, H-2A jobs with certain specialized Standard Occupational Classifications (SOCs), including operation of heavy trucks, are subject to an AEWR based on data from the Occupational Employment and Wage Statistics survey administered by USDOL's Bureau of Labor Statistics (BLS). 20 C.F.R. § 655.120(b)(1)(ii)(A). To protect against the employment of H-2A workers having an adverse effect on the wages of similarly situated U.S. workers, wages for these jobs are higher than the "field and livestock workers" wage to reflect the actual wages of workers in these SOC codes, which "generally account for more specialized or higher paid job opportunities." 88 Fed. Reg. at 12,760, 12,766–70. For "Heavy and Tractor Trailer Truck Driver" H-2A jobs (SOC 53-3032) in Texas that were certified after April

---

[2] This rule was vacated on August 25, 2025. *See Teche Vermilion Sugar Cane Growers Ass'n Inc. v. Chavez-Deremer*, No. 6:23-CV-831, 2025 WL 2472461, at *1 (W.D. La. Aug. 25, 2025).

1, 2023, the applicable AEWR (effective from July 1, 2023 through June 20, 2024) was $23.15 per hour.

## II.    Defendants' Participation in the Federal H-2A Visa Program

   A. *In4Life imported and misclassified workers whose job was to haul silage in heavy trucks.*

32.    Since 2022, Defendant In4Life has annually filed applications with USDOL seeking temporary employment certification to employ foreign workers as "custom harvesters" and, in subsequent years, "agricultural equipment operators."

33.    The application for alien labor certification submitted by In4Life in 2023 pursuant to which Plaintiff entered the United States as an H-2A worker to work for Defendants included a clearance order that incorrectly listed the job title that Plaintiff and others would perform as "Agricultural Equipment Operator," *see* Ex. B at 1, when in fact the position was for heavy tractor-trailer truck drivers.

34.    A true and correct copy of In4Life's 2023 approved clearance order is attached hereto as Exhibit B.

35.    As required by 20 C.F.R. § 653.501(c)(3)(viii), the clearance order included a certification that it described the actual terms and conditions of employment being offered and contained all material terms of the job. These certifications were signed under penalty of perjury by Michael Johnson, who identified himself as a Member of In4Life. Ex. B at 7–8.

36.    The clearance order includes, among other things, an assurance that all working conditions complied with applicable federal and state minimum wage, child labor, social security, health and safety, labor contractor registration, and other employment-related laws. See Ex. B at 4–7 (citing 20 C.F.R. § 653.501(c)(3)(iii)).

37.     In this clearance order, In4Life knowingly misrepresented the job duties to be performed by Plaintiff. The 2023 clearance order pursuant to which Plaintiff entered the United States to work for Defendants represented that workers would "operat[e] self-propelled equipment that reaps, harvests, threshes, swathes, or winnows crops such as hay, wheat, corn, milo," Ex. B at 1, when in fact Plaintiff never reaped, harvested, threshed, swathed, or winnowed crops, nor did he operate equipment to do so. Plaintiff only transported silage away from independent farms in a heavy truck.

38.     On information and belief, In4Life incorrectly stated the job title and job description that Plaintiff would perform because the lower AEWR for "field and livestock workers," which in 2023 was $14.87 per hour, applied to agricultural equipment operators (SOC 45-2091), while the H-2A prevailing wage rate required for heavy truck drivers (SOC 53-3032)in Texas was the much higher $23.15.

39.     In4Life's false statements in this clearance order were made under oath. In4Life's false statements in the clearance order were made, *inter alia*, to obtain certification of the positions as "agricultural equipment operators" instead of as "heavy truck drivers" and thereby to enable Defendants to pay Plaintiff at a rate substantially below that required by law.

40.     USDOL reviewed In4Life's temporary employment certification application, including the clearance order, *see* Ex. B., that as a matter of law incorporated the DOL's regulations at 20 C.F.R. § 655 Subpart B and any obligations required under 8 U.S.C. § 1188. USDOL approved the temporary employment certification application and clearance order, which had misrepresented the nature of the workers' job duties and the job classification.

41.     Notwithstanding the job title listed on the clearance order, the approved temporary employment certification application and clearance order nevertheless required the payment of the highest available wage among the applicable AEWR, prevailing wage, or federal or state minimum wage for the job.

B.    *Integrated imported and misclassified workers whose job was to drive long-haul loads in heavy trucks.*

42.     Since at least 2020, Integrated Agribusiness has annually filed multiple applications with USDOL seeking temporary employment certification to employ foreign workers as "farm labor" and, in subsequent years, "agricultural equipment operators."

43.     The application form for alien labor certification submitted by Integrated Agribusiness for the work Plaintiff performed for it in 2023 and 2024 included a clearance order that incorrectly listed the job title that Plaintiff and others would perform as "Ag Equipment Operator," *see* Ex. C at 1, when in fact the position was for heavy tractor-trailer truck drivers.

44.     A true and correct copy of Integrated Agribusiness's 2023-2024 approved clearance order pursuant to which Integrated Agribusiness employed Plaintiff is attached hereto as Exhibit C.

45.     As required by 20 C.F.R. § 653.501(c)(3)(viii), the clearance order included a certification that it described the actual terms and conditions of employment being offered and contained all material terms of the job. These certifications were signed under penalty of perjury by Emilio Chavez, who identified himself as a manager of Integrated Agribusiness. Ex. C at 7–8.

46.     The clearance order includes, among other things, the assurance that all working conditions complied with applicable federal and state minimum wage, child

labor, social security, health and safety, labor contractor registration, and other employment-related laws. *See* Ex. C at 4–7 (citing 20 C.F.R. § 653.501(c)(3)(iii)).

47.    In this clearance order, Integrated Agribusiness knowingly misrepresented the job duties to be performed by Plaintiff. The 2023-2024 clearance order represented that workers would perform tasks including "[d]riving and operating farm machinery, including tractors and loaders, to harvest and store corn silage (Sept-Nov); cultivating 25,000 acres of corn (Dec-Feb); Driving truck for duties such as hauling manure to spread in the fields (Dec-Feb); and performing general farm equipment maintenance and repairs (Sept-July). . . ." Ex. C at 1.

48.    While working on a visa procured by Integrated Agribusiness, Plaintiff never operated farm machinery and never harvested anything. Instead, Plaintiff hauled loads ranging from cheese to beer to manufactured stone in the interstate motor carrier operations of Cross Transport.

49.    Integrated Agribusiness's false statements in this clearance order were made under oath. Integrated Agribusiness's false statements in the clearance order were made, *inter alia*, to obtain certification to pay Plaintiff at the lower AEWR for agricultural equipment operators rather than at the higher AEWR for heavy truck drivers.

50.    On information and belief, Integrated Agribusiness incorrectly stated the job title and job description that Plaintiff would perform because the hourly AEWR for agricultural equipment operators (SOC 45-2091), which in 2023 was $14.87 and in 2024 was $15.55, was lower than the hourly wage rate required for heavy truck drivers (SOC 50-3032) of $23.15 in Texas.

51.     USDOL reviewed Integrated Agribusiness's temporary employment certification application, including the clearance order, *see* Ex. C, which as a matter of law incorporated USDOL's regulations at 20 C.F.R. § 655 Subpart B and obligations required under 8 U.S.C. § 1188. USDOL approved Integrated Agribusiness's temporary employment certification application and clearance order, which had misrepresented the nature of the workers' job duties and the job classification.

52.     Notwithstanding the job title listed on the clearance order, the approved temporary employment certification application and clearance order required the payment of the highest available wage among the applicable AEWR, prevailing wage, or federal or state minimum wage for the job.

### III.    Plaintiff's Employment in Silage Hauling in 2023 with In4Life, Outlier Dairy, and Cross Transport

53.     Plaintiff maintains his permanent residence in Mexico.

54.     Plaintiff is relatively unfamiliar with his legal rights in the United States or the requirements of nonimmigrant labor petitions made by U.S. employers.

55.     Plaintiff spent the equivalent of over U.S. $300 in Mexican pesos on airfare to Monterrey, lodging, and other expenses to receive an H-2A visa and work for In4Life.

56.     Plaintiff was never reimbursed the full amount of his inbound transportation and subsistence expenses.

57.     After receiving his visa to work for In4Life, Plaintiff was transported on a bus arranged by the employer from Monterrey, Mexico to Dalhart, Texas, with approximately 43 other workers.

58. Defendants In4Life, Outlier Dairy, and Cross Transport never furnished Plaintiff with a copy of his work contract/the clearance order.

59. When he arrived in or around the end of August 2023 to work, Plaintiff was assigned to drive a heavy tractor-trailer truck with a Cross Transport logo on it.

60. On information and belief, the other approximately 43 workers were similarly assigned to drive heavy tractor-trailer trucks branded with Cross Transport's logo.

61. On information and belief, the trucks were owned or leased by Cross Transport and registered to Cross Transport. Cross Transport was responsible for their safety and regulatory compliance with the Federal Motor Carrier Safety Administration (FMCSA), and the trucks were referred to in the internal software system used to monitor each driver's work as Cross Truck (number), such as Plaintiff's, which was #110.

62. Plaintiff was added to a group in the messaging application WhatsApp to receive load assignments.

63. In this WhatsApp group, Plaintiff received assignments from a dispatcher named Ruby. There were others in the group who performed accounting and payroll functions.

64. On information and belief, the people with whom Plaintiff was instructed to correspond via that WhatsApp group were employees or agents of Cross Transport.

65. On information and belief, the other H-2A workers hired under the same clearance order as Plaintiff were similarly assigned to drive Cross Transport trucks.

66. During the late summer through winter of 2023, Plaintiff was directed to pick up his paychecks at the Cross Transport office at 3267 FM 297, Dalhart, Texas.

67.     The paystub attached to Plaintiff's paychecks from In4Life listed the same address that In4Life uses in its corporate filings with the Secretary of State: 3913 Veribest Park Rd., [Miles,] TX 76861.

68.     In4Life and Cross Transport harvested silage crops from farm fields to storage facilities at various dairies in West Texas. The dairies use the silage as feed for livestock, and various products derived from the livestock are then sold in interstate commerce. On information and belief, none of these fields or dairies are owned by In4Life.

69.     Plaintiff's job assignments throughout his employment with In4Life and Cross Transport consisted of driving heavy trucks in excess of 26,000 pounds transporting silage produced by independent farms to various dairies and feedlots.

70.     From late summer to early November, when he worked hauling silage and manure on a visa procured by In4Life, Plaintiff returned to the farm labor housing complex at 4290 Farm to Market 281, Dalhart, Texas each night, where he and other workers parked their Cross Transport trucks in an adjacent yard.

71.     The property on which the yard and housing are located is owned by Outlier Dairy.

72.     In 2023 and 2024, both In4Life Farms and Integrated Agribusiness procured housing licenses to house their workers at this housing complex.

73.     Prior to leaving the yard in the morning and after returning to the yard at night, Plaintiff was required to complete a pre- or post-trip inspection of his assigned truck in an app that In4Life and Cross Transport used to monitor the drivers' hours and safety compliance.

74. These inspections included tasks such as checking the tires, brakes, lights, and oil, and inspecting the trailer, and they took about 20 minutes to complete.

75. In his first pay period working for In4Life and Cross Transport, Plaintiff worked at least 84 hours, including pre- and post-trip inspections.

76. Plaintiff's first paycheck from In4Life, however, shows that he was compensated for only 74 hours of work and was not paid overtime during this pay period.

77. Throughout his time hauling silage, Plaintiff worked in excess of 40 hours per workweek; in at least two weeks, he worked in excess of 80 hours per week.

78. Plaintiff was never paid overtime at time-and-a-half his regular rate of pay.

79. Plaintiff was reported on his pay stubs as having been paid the Texas AEWR for agricultural equipment operators for his silage-hauling work, which was $14.87 per hour in 2023.

80. Plaintiff's paycheck stubs reflected a $25 fee for cleaning the housing, which was not disclosed to workers in the clearance order and which Plaintiff had not agreed would be deducted.

81. This deduction is labeled "Ag Deduction" on Plaintiff's pay stubs.

82. On information and belief, Plaintiff's co-workers worked similar hours. Some other workers had the same job responsibilities as Plaintiff, namely, to transport silage in heavy trucks.

83. In some workweeks, Plaintiff and similarly situated workers drove trucks exclusively within the state of Texas and did not drive across state lines.

84. During his employment with In4Life, Plaintiff's paystubs routinely underreported the actual hours which he had worked and for which he was owed compensation.

85. During his employment with In4Life, Plaintiff was paid nowhere near the $23.15 AEWR for heavy truck driving.

86. In4Life did not pay Plaintiff or similarly situated H-2A workers the higher AEWR to which they were entitled for heavy truck driving.

87. In4Life paid Plaintiff and similarly situated workers by two-week pay periods for their labor.

88. During the 2023 silage season, Plaintiff and, on information and belief, similarly situated workers were reported on their pay stubs as having been paid approximately $14.87 per hour. They were not compensated at one and one-half the workers' regular rate for time each of them was employed in excess of 40 hours in a workweek.

89. On information and belief, In4Life calculated each similarly situated worker's hours in the same manner, and the time for which each worker was compensated did not reflect all the compensable time he or she worked for In4Life.

90. On information and belief, the $25 cleaning fee was also deducted from each similarly situated worker's pay.

91. While Plaintiff worked under the In4Life clearance order, Defendants In4Life, Outlier Dairy, and Cross Transport did not furnish Plaintiff with earnings records containing all information required by the H-2A regulations.

92.    On information and belief, Defendants In4Life, Outlier Dairy, and Cross Transport did not keep adequate and accurate records of Plaintiff's earnings containing all information required by the H-2A regulations.

93.    Plaintiff worked more than half the term of his H-2A contract with Defendants In4Life, Outlier Dairy, and Cross Transport but was not reimbursed for the full amount of his transportation costs and daily subsistence for traveling from his permanent home in Mexico to work for these Defendants.

**IV.    Plaintiff's Employment in Long-Haul Trucking with Integrated Agribusiness and Cross Transport**

94.    In early November, Plaintiff was told by his silage dispatcher, Ruby, that the silage hauling work was ending but that he could receive a visa extension to continue working as a long-haul driver.

95.    Plaintiff agreed, and Ruby provided him with contact information for Rachel. Ruby told Plaintiff that Rachel would add him to a new WhatsApp group for long-haul assignments.

96.    Defendants Integrated Agribusiness and Cross Transport never furnished Plaintiff with a copy of his work contract/the clearance order for this work.

97.    Based on instructions from Rachel, Plaintiff rode with another worker to Amarillo, where he picked up the keys to a sleeper cab truck, which also had a Cross Transport logo on it.

98.    He was given the keys by Rachel, who became his dispatcher for long-haul trucking work.

99.    On information and belief, the sleeper cab truck was owned or leased by Cross Transport and was registered to Cross Transport. Cross Transport was responsible

for its compliance with safety and regulatory standards issued by the FMCSA, and it was referred to in Defendants' software system as Cross Truck #730.

100.    Plaintiff was added to a new WhatsApp group with Rachel to receive load assignments and provide copies of bills of lading, fuel receipts, and other documents and photos related to his work.

101.    On information and belief, the people with whom Plaintiff was instructed to correspond via that WhatsApp group were employees or agents of Cross Transport.

102.    For the remainder of 2023 and into 2024, Plaintiff was assigned to drive a heavy truck in excess of 26,000 pounds transporting loads of cargo such as white cheddar, beef chorizo, and manufactured stone on long hauls between states including Texas, Wisconsin, Nevada, and others.

103.    Plaintiff was issued a fuel card bearing the name Cross Integrated Transport, which he was told to use for fuel for the truck and its refrigeration system.

104.    Throughout November and December of 2023 and into January 2024, while Plaintiff was working as a long-haul driver for Integrated Agribusiness and Cross Transport, he continued to receive his pay by paper check, and he had to continue to pick up his paychecks at the Cross Transport office at 3267 FM 297, Dalhart, Texas.

105.    Each paper check Plaintiff received from Defendants through January 12, 2024, was issued from an account for "In-4Life Farms, LLC."

106.    All wages that Plaintiff received from Defendants in 2023 were reported to the IRS as wages paid to him as an employee of In4Life.

107.    Plaintiff was approved for another H-2A visa, this time with Integrated Agribusiness, in or around January 2024.

108. Once Plaintiff's new visa was approved, the nature of his work did not change, but he began receiving his pay from a bank account for Integrated Agribusiness Solutions, LLC.

109. Plaintiff received one paper check from Integrated Agribusiness in January 2024. He was then paid in subsequent pay periods by direct deposit.

110. Integrated Agribusiness and Cross Transport did not pay Plaintiff the AEWR of $23.15 per hour for heavy truck drivers.

111. Integrated Agribusiness and Cross Transport's computation of hours worked by Plaintiff did not include all compensable hours worked each pay period.

112. Additionally, when the long-haul trucking work began in November 2023, Plaintiff's work required that he sleep in the truck while hauling loads across the country, as he usually could not return to the Dalhart housing at night.

113. The truck in which Plaintiff slept while doing this work was not inspected or licensed as migrant labor housing by the state housing authority as required by 20 C.F.R. § 655.122(d)(6)(ii).

114. While doing this work from November 2023 until May 2024, Plaintiff was not provided meals, nor was he reimbursed for meals by his employer, and he did not have access to kitchen facilities to prepare meals, as required by 20 C.F.R. § 655.122(g).

115. The truck in which Plaintiff slept violated Texas and federal migrant labor housing regulations in that it had neither 50 square feet of space in the sleeping area nor 100 square feet in total area and lacked safety features such as, among other things, a first aid kit, as required by 29 C.F.R. § 1910.142(k) and 10 Tex. Admin. Code §§ 90.1–90.9.

116.    Despite Plaintiff's limited ability to return to Dalhart housing, Defendants made several more $25 deductions, which were not authorized by the H-2A contract, from his pay to clean the housing facilities.

117.    While Plaintiff worked under the Integrated Agribusiness clearance order, Defendants Integrated Agribusiness and Cross Transport did not furnish Plaintiff with his earnings records containing all information required by the H-2A regulations, the Fair Labor Standards Act, and the Texas Payday Act.

118.    On information and belief, Defendants Integrated Agribusiness and Cross Transport did not keep adequate and accurate records of Plaintiff's earnings containing all information required by the H-2A regulations.

119.    In or around May 2024, Plaintiff quit working for Integrated Agribusiness and Cross Transport.

120.    Although he had been paid by direct deposit since January 2024, Plaintiff never received his last payroll deposit.

121.    Plaintiff called to ask why he had not been paid, and a payroll employee, Lorena, told him that he would need to pick up his last paycheck in person.

122.    During that phone call, Lorena also told Plaintiff that his last paycheck had various deductions made, none of which had been disclosed in the clearance order or authorized by Plaintiff.

## FIRST CAUSE OF ACTION: FLSA OVERTIME WAGES
### (Plaintiff Jose Daniel Scobell Bencomo against Defendants In4Life, Outlier Dairy, and Cross Transport)

123.    This count sets forth a claim for damages and declaratory relief by Plaintiff for Defendants' failure to pay overtime wages as required by the FLSA, 29 U.S.C. § 207(a).

124.    In 2023, Defendant In4Life employed Plaintiff, Defendant In4Life was Plaintiff's employer, and Plaintiff was In4Life's employee within the meaning of the FLSA, 29 U.S.C. § 203(d), (e), & (g).

125.    In 2023, Defendant Outlier Dairy employed Plaintiff, Defendant Outlier was Plaintiff's employer, and Plaintiff was Outlier Dairy's employee within the meaning of the FLSA, 29 U.S.C. § 203(d), (e), & (g).

126.    In 2023, Defendant Cross Transport employed Plaintiff, Defendant Cross Transport was Plaintiff's employer, and Plaintiff was Cross Transport's employee within the meaning of the FLSA, 29 U.S.C. § 203(d), (e), & (g).

127.    Defendants violated the overtime wage provisions of the FLSA, 29 U.S.C. § 207(a), by failing to pay Plaintiff at a rate not less than one and one-half times his regular rate for those workweeks during 2023 in which he worked in excess of 40 hours.

128.    Defendants' violations of the FLSA's overtime provisions as set out in this count were willful within the meaning of 29 U.S.C. § 255(a). Defendants showed reckless disregard as to whether their failure to pay overtime wages was prohibited by the FLSA. Although they were on notice that the overtime exemption of the FLSA only applies to agricultural work, as demonstrated by the language in the clearance order and temporary labor certification application misrepresenting the work as agricultural and

previous investigations into their affiliated entities—Integrated Agribusiness and Accelerated Harvesting, LLC—Defendants failed to adequately inquire or ascertain whether they were obligated to pay Plaintiff at one and one-half his regular rate for work in excess of 40 hours in a workweek. Defendants kept computerized records of Plaintiff's work activities and knew he was employed in excess of 40 hours per week, but Defendants nevertheless did not pay overtime.

129.    Because of Defendants' violations of the FLSA's overtime provisions, Plaintiff is entitled to recover his unpaid overtime wages, plus an additional equal amount in liquidated damages, and attorney's fees and costs in accordance with 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION: FLSA OVERTIME WAGES**
**(Collective Action against Defendants In4Life, Outlier Dairy, and Cross Transport)**

130.    This count sets forth a claim for damages and declaratory relief by the workers similarly situated to Plaintiff (the "H-2A truck drivers") for Defendants' failure to pay overtime wages as required by the FLSA, 29 U.S.C. § 207(a).

131.    In 2023, Defendant In4Life Farms employed the H-2A truck drivers, Defendant In4Life was the H-2A truck drivers' employer, and the H-2A truck drivers were In4Life's employees within the meaning of the FLSA, 29 U.S.C. § 203(d), (e), & (g).

132.    In 2023, Defendant Outlier Dairy employed the H-2A truck drivers, Defendant Outlier Dairy was the H-2A truck drivers' employer, and the H-2A truck drivers were Outlier Dairy's employees within the meaning of the FLSA, 29 U.S.C. § 203(d), (e), & (g).

133.    In 2023, Defendant Cross Transport employed the H-2A truck drivers, Defendant Cross Transport was the H-2A truck drivers' employer, and the H-2A truck drivers were Cross Transport's employees within the meaning of the FLSA, 29 U.S.C. § 203(d), (e), & (g).

134.    Defendants violated the overtime wage provisions of the FLSA, 29 U.S.C. § 207(a), by failing to pay the H-2A truck drivers at a rate not less than one and one-half times their regular rate for those workweeks during 2023 in which they worked in excess of 40 hours.

135.    On information and belief, many, if not all, of the 80 H-2A truck drivers who entered the United States to work for Defendants pursuant to the clearance order attached hereto as Exhibit B were subjected to the same scheme to avoid paying overtime as set forth in Parts II and III above to which Plaintiff was subjected.

136.    Defendants' violations of the FLSA's overtime provisions as set out in this count were willful within the meaning of 29 U.S.C. § 255(a). Defendants showed reckless disregard as to whether their failure to pay overtime wages was prohibited by the FLSA. Although they were on notice that the overtime exemption of the FLSA only applies to agricultural work, as demonstrated by the language in the clearance order and temporary labor certification application misrepresenting the work as agricultural and by previous investigations into their affiliated entities—Integrated Agribusiness and Accelerated Harvesting, LLC—Defendants failed to adequately inquire or ascertain whether they were obligated to pay the H-2A truck drivers at one and one-half their regular rate for work in excess of 40 hours in a workweek. Defendants kept computerized

records of the H-2A truck drivers' work activities and knew they were employed in excess of 40 hours per week, but Defendants nevertheless did not pay overtime.

137.    Because of Defendants' violations of the FLSA's overtime provisions, the H-2A truck drivers are entitled to recover their unpaid overtime wages, plus an additional equal amount in liquidated damages, and attorney's fees and costs in accordance with 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION: BREACH OF CONTRACT
### (Plaintiff Jose Daniel Scobell Bencomo against Defendants In4Life, Outlier Dairy, and Cross Transport for employment period August–November 2023)

138.    Plaintiff was employed by Defendants In4Life, Outlier Dairy, and Cross Transport through the H-2A program with the terms as set out in the temporary employment certification application and accompanying clearance order described above.

139.    From approximately August to November 2023, Defendant In4Life employed Plaintiff, Defendant In4Life was Plaintiff's employer, and Plaintiff was its employee within the meaning of the regulations governing the H-2A program, 20 C.F.R. § 655.103(b).

140.    From approximately August to November 2023, Defendant Outlier Dairy employed Plaintiff, Defendant Outlier was Plaintiff's employer or joint employer, and Plaintiff was its employee within the meaning of the regulations governing the H-2A program, 20 C.F.R. § 655.103(b).

141.    From approximately August to November 2023, Defendant Cross Transport employed Plaintiff, Defendant Cross Transport was Plaintiff's employer or joint employer, and Plaintiff was its employee within the meaning of the regulations governing the H-2A program, 20 C.F.R. § 655.103(b).

142.    In4Life had actual authority to recruit H-2A workers to perform services for Outlier Dairy.

143.    In4Life and Outlier Dairy had actual authority to recruit H-2A workers to perform services for Cross Transport.

144.    In4Life and Outlier Dairy had actual authority to bind Cross Transport to the employment contract with Plaintiff.

145.    By assigning Plaintiff and other workers to drive trucks owned or leased by Cross Transport and bearing Cross Transport logos, by referring to those trucks as, e.g., "Cross Truck # 110" (the truck assigned to Plaintiff), by instructing Plaintiff and other workers to collect paychecks at Cross Transport's office (which bore Cross Transport's logo and where Cross Transport conducted business operations), and by other acts or omissions, Defendant Cross Transport held out In4Life as having the authority to conduct business on Cross Transport's behalf.

146.    Defendant Cross Transport had full knowledge of the material facts set out in the preceding paragraph.

147.    On the basis of the facts set forth herein, Plaintiff had a reasonable belief that In4Life had the authority to conduct business on behalf of Cross, including the formation of employment contracts with H-2A workers.

148.    Plaintiff had a reasonable belief that In4Life had the authority to conduct business on behalf of Cross Transport.

149.    In4Life had apparent authority to bind Cross Transport to the employment contract with Plaintiff.

150.    Justifiably relying on In4Life's terms of employment as set out in the clearance order, Plaintiff worked as directed by agents of Defendants and was reported on his payroll records as having been paid at the lower AEWR of $14.87 per hour for agricultural equipment operators, rather than the legally required AEWR of $23.15 for driving heavy trucks, was not paid $23.15 per hour, and was not paid for all hours worked.

151.    The H-2A clearance order provided that Plaintiff would be paid the highest of the prevailing wage, AEWR, or federal or state minimum wage. The clearance order also required compliance with all applicable federal and state employment-related laws, including compensation for overtime hours, and payment of the lawful wage rate that applied to the actual work performed.

152.    Defendants In4Life, Outlier Dairy, and Cross Transport breached the employment contract with Plaintiff by:

a. Failing to furnish Plaintiff with a copy of his work contract/the clearance order;

b. Assigning Plaintiff to perform work not disclosed in the work contract/clearance order;

c. Failing to pay Plaintiff the wage rate applicable to the job he performed, which was transporting silage produced by independent growers in a heavy truck;

d. Failing to pay Plaintiff overtime wages when he worked more than 40 hours in a workweek, in violation of the contractual requirement to comply with all federal laws related to employment;

e. Failing to pay Plaintiff all wages he was due each pay period and upon the completion of his contract as required by his contract as required by the Texas Payday Act, Tex. Lab. Code § 61.011 & .014, and in violation of the contractual requirement to comply with all state laws related to employment;

f. Failing to reimburse Plaintiff's reasonable costs and expenses incurred for transportation and daily subsistence from his home in Mexico to the worksite in Dalhart, Texas;

g. Failing to furnish Plaintiff with earnings records containing all information required by the H-2A regulations, 20 C.F.R. § 655.122(k);

h. Failing to keep adequate and accurate records of Plaintiff's earnings containing all information required by the H-2A regulations, 20 C.F.R. § 655.122(j); and

i. Making deductions from Plaintiff's pay that were not authorized by the H-2A contract.

153. Because In4Life acted as their agent in entering into an employment contract with Plaintiff on behalf of Outlier Dairy and Cross Transports, Defendants In4Life, Outlier Dairy, and Cross Transport are liable for these breaches.

154. As common-law employers of Plaintiff, Defendants In4Life, Outlier Dairy, and Cross Transport are liable for these breaches.

155.    As a result of Defendants In4Life, Outlier Dairy, and Cross Transport's actions as described in this count, Plaintiff has been denied wages and benefits due to him under his employment contract for which he is entitled to relief.

156.    Defendants In4Life, Outlier Dairy, and Cross Transport are liable to Plaintiff for compensatory damages incurred as a result of their breaches of contract.

157.    Defendants In4Life, Outlier Dairy, and Cross Transport are liable to Plaintiff for all actual, incidental, reliance, expectation, consequential, and compensatory damages caused by their breach of contract, as well as Plaintiff's reasonable attorney's fees and costs pursuant to Texas Civil Practice and Remedies Code § 38.001(b).

**FOURTH CAUSE OF ACTION: BREACH OF CONTRACT**
**(Plaintiff Jose Daniel Scobell Bencomo against Defendants Integrated Agribusiness and Cross Transport for employment period November 2023–May 2024)**

158.    Plaintiff was employed by Defendants Integrated Agribusiness and Cross Transport from approximately November 2023 to May 2024 through the H-2A program with the terms as set out in the temporary employment certification application and accompanying clearance order described above.

159.    From approximately November 2023 to May 2024, Defendant Integrated Agribusiness employed Plaintiff, Defendant Integrated Agribusiness was Plaintiff's employer, and Plaintiff was its employee within the meaning of the regulations governing the H-2A program, 20 C.F.R. § 655.103(b).

160.    From approximately November 2023 to May 2024, Defendant Cross Transport employed Plaintiff, Defendant Cross Transport was Plaintiff's employer or joint employer, and Plaintiff was its employee within the meaning of the regulations governing the H-2A program, 20 C.F.R. § 655.103(b).

161. Integrated Agribusiness had actual authority to recruit H-2A workers to perform services for Cross Transport.

162. Integrated Agribusiness had actual authority to bind Cross Transport to the employment contract with Plaintiff.

163. By assigning Plaintiff and other workers to drive trucks owned or leased by Cross Transport and bearing Cross Transport logos, by instructing Plaintiff and other workers to collect paychecks at Cross Transport's office (bearing Cross Transport's logo and where Cross Transport conducts business operations), and by other acts or omissions, Defendant Cross Transport held out Defendant Integrated Agribusiness as having the authority to conduct business on Cross Transport's behalf.

164. Defendant Cross Transport had full knowledge of the material facts set out in the preceding paragraph.

165. On the basis of the facts set forth herein, Plaintiff had a reasonable belief that Integrated Agribusiness had the authority to conduct business on behalf of Cross Transport, including the formation of employment contracts with H-2A workers.

166. Integrated Agribusiness therefore had apparent authority to bind Cross Transport to the employment contract with Plaintiff.

167. Justifiably relying on Integrated Agribusiness's terms of employment as set out in the clearance order, Plaintiff worked as directed by agents of Defendants and was reported by Defendants on his payroll records as having been paid at the lower AEWRs of $14.87 and $15.55 for 2023 and 2024, respectively, for agricultural equipment operators, rather than the legally required AEWR of $23.15 for driving heavy trucks, was not paid $23.15 per hour, and was not paid for all hours worked.

168.    The H-2A clearance order required Integrated Agribusiness to pay Plaintiffs the highest of the prevailing wage, AEWR, or federal or state minimum wage. It further required Integrated Agribusiness to comply with all applicable Federal and state employment-related laws and to pay the lawful wage rate that applied to the actual work performed.

169.    Defendants Integrated Agribusiness and Cross Transport breached the employment contract with Plaintiff by:

   a. Failing to furnish Plaintiff with a copy of his work contract/the clearance order;

   b. Assigning Plaintiff to perform work not disclosed in the work contract/clearance order;

   c. Failing to pay Plaintiff the wage rate applicable to the job he performed, which was transporting cargo on long hauls in interstate commerce;

   d. Failing to pay Plaintiff all wages he was due each pay period and upon the completion of his contract as required by the Texas Payday Act, Tex. Lab. Code § 61.011 & .014, and in violation of the contractual requirement to comply with all State laws related to employment;

   e. Failing to provide Plaintiff with three meals a day or furnish free and convenient cooking and kitchen facilities;

   f. Failing to provide Plaintiff with housing that met the applicable local, state, and/or federal health and safety standards;

g. Failing to furnish Plaintiff with earnings records containing all information required by the H-2A regulations, 20 C.F.R. § 655.122(k); and

h. Failing to keep adequate and accurate records of Plaintiff's earnings containing all information required by the H-2A regulations, 20 C.F.R. § 655.122(j).

170. Because Integrated Agribusiness acted as an agent in entering into an employment contract with Plaintiff on behalf Cross Transport, Defendants Integrated Agribusiness and Cross Transport are liable for these breaches.

171. As common-law employers of Plaintiff, Defendants Integrated Agribusiness and Cross Transport are liable for these breaches.

172. As a result of Defendants Integrated Agribusiness and Cross Transport's actions as described in this count, Plaintiff has been denied wages and benefits due to him under his employment contract for which he is entitled to relief.

173. Defendants Integrated Agribusiness and Cross Transport are liable to Plaintiff for all actual, incidental, reliance, expectation, consequential, and compensatory damages caused by their breach of contract, as well as Plaintiff's reasonable attorney's fees and costs pursuant to Texas Civil Practice and Remedies Code § 38.001(b).

**FIFTH CAUSE OF ACTION: QUANTUM MERUIT**
**(Plaintiff Jose Daniel Scobell Bencomo against All Defendants)**

174. Plaintiff alternatively asserts a quantum meruit claim in the event the Court finds that there was not a valid contract between Plaintiff and any of the Defendants.

175. From August to early November of 2023, by hauling silage from fields to local dairies and feedlots as directed by his dispatcher, Plaintiff provided valuable truck driving services to Defendants In4Life, Outlier Dairy, and Cross Transport.

176. Defendants In4Life, Outlier Dairy, and Cross Transport accepted the benefit of Plaintiff's truck driving work by receiving compensation from their customers for the services Plaintiff provided.

177. Then, from November 2023 to May 2024, Plaintiff provided valuable truck driving services to Defendants Integrated Agribusiness and Cross Transport by hauling loads on their behalf on long hauls across the country.

178. Defendants Integrated Agribusiness and Cross Transport accepted the benefit of Plaintiff's truck driving work by collecting compensation from their customers for the services Plaintiff provided.

179. Because Plaintiff worked for Defendants through the H-2A visa program, which requires that workers be paid the highest of the federal or state minimum wage, the AEWR, or the prevailing wage for the work that they perform, Defendants had notice that Plaintiff expected to be compensated for his work.

180. Defendants accepted services from Plaintiff without compensating him, and he is entitled to be paid for the full value of his work.

### SIXTH CAUSE OF ACTION: FLSA MINIMUM WAGES
**(Plaintiff Jose Daniel Scobell Bencomo against Defendants Integrated Agribusiness and Cross Transport)**

181. This count sets forth a claim for damages and declaratory relief by Plaintiff for Defendants' failure to pay minimum wages as required by the FLSA, 29 U.S.C. § 206(a).

182. In 2023 and 2024, Defendant Integrated Agribusiness employed Plaintiff, Defendant Integrated Agribusiness was Plaintiff's employer, and Plaintiff was an employee within the meaning of the FLSA, 29 U.S.C. § 203(d), (e), & (g).

183. In 2023 and 2024, Defendant Cross Transport employed Plaintiff, Defendant Cross Transport was Plaintiff's employer, and Plaintiff was an employee within the meaning of the FLSA, 29 U.S.C. § 203(d), (e), & (g).

184. Defendants violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a)(1), by failing to pay Plaintiff at a rate of at least $7.25 per hour for those workweeks during 2024 in which Defendants did not pay him, i.e., his final pay period, for which he never received his pay.

185. Because of Defendants' violations of the FLSA's minimum wage provisions, Plaintiff is entitled to recover his unpaid minimum wages, plus an additional equal amount in liquidated damages, and attorney's fees and costs in accordance with 29 U.S.C. § 216(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

a. Grant judgment in favor of Plaintiff on his Count I claim under the overtime provisions of the FLSA in the amount of the unpaid overtime wages due him, as well as an equal amount as liquidated damages;

b. Grant judgment in favor of those similarly situated employees described in Count II who timely opt in and award each of them

the amount of FLSA unpaid overtime wages due to them, as well as an equal amount as liquidated damages;

c.    Grant judgment in favor of Plaintiff on his breach of contract claims as set forth in Count III and award him compensatory damages;

d.    Grant judgment in favor of Plaintiff on his breach of contract claims as set forth in Count IV and award him compensatory damages;

e.    Grant judgment in favor of Plaintiff on his claims set forth in Count V for quantum meruit, and award Plaintiff the compensation due him for his labor;

f.    Grant judgment in favor of Plaintiff on his Count VI claim under the minimum wage provisions of the FLSA in the amount of the unpaid minimum wages due him, as well as an equal amount as liquidated damages;

g.    Declare that Defendants, by the acts and omissions described above, violated Plaintiff's and the H-2A truck drivers' rights under the overtime and minimum wage provisions of the FLSA at 29 U.S.C. §§ 206(a)(1) & 207(a) as set forth in Counts I, II, and VI;

h.    Declare that Defendants, by the actions described above, violated Plaintiff's rights under his H-2A contract;

i.    Award Plaintiff a reasonable attorney's fee pursuant to 29 U.S.C. § 216 and Tex. Civ. Prac. & Rem. Code § 38.001(b);

j.      Award Plaintiff pre- and post-judgment interest, as allowed by law;

k.      Award Plaintiff the costs of this action; and

l.      Grant such further relief as this Court deems just and appropriate.

Respectfully submitted,

TEXAS RIOGRANDE LEGAL AID, INC.

By: */s/ Sidonia Mitchell*
E. Sidonia Mitchell
300 S. Texas Blvd.
Weslaco, TX 78596
(956) 825-3158
Fax: (956) 591-8752
Texas Bar No. 24125331
smitchell@trla.org

*/s/ Douglas L. Stevick*
Douglas L. Stevick
300 S. Texas Blvd.
Weslaco, TX 78596
(956) 982-5557
Fax: (956) 591-8752
Texas Bar No. 00797498

LEGAL AID OF NORTHWEST TEXAS

By:  */s/ Kaylie Hidalgo*
Kaylie Hidalgo
2001 Beach St., Ste. 510
Fort Worth, TX 76103
(817) 882-1004
Fax: (817) 736-1602
Texas Bar No. 24138123
hidalgok@lanwt.org

ATTORNEYS FOR PLAINTIFF